IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

J.T. SELVIE                                                             PLAINTIFF

vs.                                              CIVIL ACTION NO. 1:10-CV-00159-SAA

MICHAEL J. ASTRUE,
COMMISSIONER OF SSA                                                     DEFENDANT

## MEMORANDUM OPINION

      This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff J.T. Selvie for a period of disability (POD) and disability insurance benefits (DIB) under Section 216(i) and 223(d) of the Social Security Act. Plaintiff filed an application for POD and DIB on May 14, 2007, alleging disability beginning on March 30, 2007. Docket 4, Exhibit 6, p. 2-9.[1] Plaintiff's claim was denied initially (Ex. 3, p. 11-20) and on reconsideration. Ex. 5, p. 10-12. He filed a request for hearing (Ex. 5, p. 9) and was represented by an attorney at the administrative hearing on October 20, 2009. Ex. 3, p. 25-55. The Administrative Law Judge (ALJ) issued an unfavorable decision on February 16, 2010 (Ex. 3, p. 11-20), and the Appeals Council denied plaintiff's request for a review. Ex. 3, p. 2-5. Plaintiff filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

---

[1]The Administrative Record in this case is attached to the defendant's Answer at Docket Entry 4. All citations to the Administrative Record are to the Exhibit and Page Number at Docket Entry 4 and not to the bates number at the bottom of the page.

## I. FACTS

Plaintiff was born on August 29, 1954 and was 52 years old at the alleged onset of his disability.[2] Ex. 3, p. 32. He completed the eighth grade and obtained a GED. *Id.* Previously employed as a product handler, the plaintiff worked at Bryan Foods for over 33 years. *Id.* The plaintiff had been restricted to light duty when the plant closed on March 30, 2007. Ex. 3, p. 32-33. He claimed disability due to high blood pressure, two bulging discs in his lower back, prostate problems, and bladder surgery resulting in frequent urination. Ex. 7, p. 6.

The ALJ determined that plaintiff's obesity, hypertension, shoulder disorders, back disorders, neck disorders and cardiac disorders constituted "severe" impairments but that the plaintiff failed to demonstrate the required severity under 20 C.F.R. §§ 404.1521 and 416.921 for his bladder disorder. Ex. 3, p. 14-15. The ALJ found that the plaintiff's severe impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). Ex. 3, p. 15-17. He concluded that the plaintiff's hypertension did not meet Listing 4.02 or 4.04 and that his cardiac disorders did not satisfy Listing 4.02, 4.05, 4.11 or 4.12. Ex. 3, p. 15-16. The ALJ considered the criteria of Listings 1.00, *et seq.*, specifically 1.02A, 1.02B, 1.03, 1.04A, 1.04B, 1.04C, 1.05, 1.06, 1.07 or 1.08, in evaluating plaintiff's shoulder, back and neck disorders but found that the record evidence did not demonstrate joint deformity, inability to ambulate effective, inability to perform fine and gross movements, evidence of root compression, spinal arachnoiditis, lumbar spinal stenosis, amputation, fracture or soft tissue injury as required. *Id.* In evaluating his obesity, the ALJ

---

[2]On the alleged disability onset date, the plaintiff qualified as an individual "closely approaching advanced age." During the pendency of his application, his age category changed to "advanced age." Ex. 3, p. 18.

noted the plaintiff's height and weight [5' 8" tall and 221 pounds] and considered the impact of obesity on his functioning. Ex. 3, p. 16-17.

Considering the entire record, the ALJ concluded that the plaintiff retained the Residual Functional Capacity (RFC) to perform the full range of medium work in that "[h]e can lift and carry and push and pull 25 pounds frequently and 50 pounds occasionally. He can stand and walk for six hours and sit for six hours in an eight-hour workday." Ex. 3, p. 17. The ALJ found that the plaintiff's impairments "can reasonably be expected to impose symptoms as he alleges" but not with the "intensity, persistence, and limiting effects as he alleges" and found that the plaintiff's testimony "appears greatly disproportionate to the objective medical evidence."[3] Ex. 3, p. 17-18.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments prevent him from performing his past relevant work as a material handler, a semi-skilled job performed at the heavy exertional level. Ex. 3, p. 18. The VE testified that with the limitations set out by the ALJ in his hypothetical, the plaintiff would be able to perform unskilled jobs performed at the medium level of exertion such as a furniture and metal assembler (DOT 709.684-014) and a food service worker (DOT 355.677-010). Ex. 3, p. 50-52. Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the

---

[3]The ALJ noted that the plaintiff "testified incredibly regarding his activities of daily living" when he stated that he could not perform any household chores and found that the record does not substantiate any debilitating "tiredness" that would prevent plaintiff from performing any lifting or any significant walking. The ALJ further found that although plaintiff said that he experienced pain of 7 to 8 on a 10 point scale, his medication, Ultram, Lisinopril, fluid medication and Darvocet, and treatment were "routine and conservative in nature," that surgery was generally successful in relieving plaintiff's conditions and that plaintiff did not allege any side effects from his medication. Ex. 3, p. 17-18.

plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and he therefore was "not disabled" under the Act. Ex. 3, p. 19.

The plaintiff claims that the ALJ's RFC was not supported by any medical opinion in the record. Docket 7, p. 5-9. He further claims that the ALJ and the Appeals Council erred in finding the plaintiff was not disabled pursuant to the Medical Vocational Guidelines and SSR 96-8p. Docket 7, p. 9-12.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[4] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[5] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[6] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[7] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[8] If plaintiff

---

[4] *See* 20 C.F.R. § 404.1520, 416.920 (2003).

[5] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[6] 20 C.F.R.§ 404.1520(b) (2003).

[7] 20 C.F.R. § 404.1520 (2003).

[8] 20 C.F.R. § 404.1520(d) (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."

does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[9] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[10] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[11]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited powers of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[12] even if it finds that the evidence leans against the Commissioner's decision.[13] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might

---

20 C.F.R. § 404.1525 (2003).

[9] 20 C.F.R. § 404.1520(e) (2003).

[10] 20 C.F.R § 404.1520(f)(1) (1996) (1996).

[11] *Muse*, 925 F.2d at 789.

[12] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[13] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since May 20, 2007, satisfying step one.[14] Ex. 3, p.13. The ALJ found at step two that plaintiff's obesity, hypertension, shoulder disorders, back disorders, neck disorders and cardiac disorders were severe impairments but that his bladder disorder was not a severe impairment. Ex. 3, p. 13-15. At step three, the plaintiff's impairments did not meet the stringent requirements set out in the listings.[15] The ALJ determined that the plaintiff retained the functional capacity for a full range of medium work: "He can lift and carry and push and pull 25 pounds frequently and 50 pounds

---

[14] The plaintiff reported severance payments of $4,894.00 in the third quarter of 2007 and $376.00 in the fourth quarter of 2007 which the ALJ found did not constitute "substantial gainful activity" within the meaning of the Social Security Act. Ex. 3, p. 12.

[15] *See Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

occasionally. He can stand and walk for six hours and sit for six hours in an eight-hour workday." At step four the ALJ concluded that the plaintiff could not return to his past work. Ex. 3, p. 15-16. The ALJ's step five determination that plaintiff was capable of performing other work resulted in a finding of "not disabled" under the Act. Ex. 3, p. 19-20.

The plaintiff argues that the ALJ's RFC was not supported by any medical opinion in the record, rendering erroneous his hypothetical to the VE and his reliance on Rules 203.22 and 203.15 of the Medical-Vocational Guidelines at step five.[16] The Commissioner responds that the record evidence supports the ALJ's RFC assessment and his determination that plaintiff is capable of performing medium work. Docket 9, p. 7-9.

The record evidence includes a report from one non-examining consultant, Dr. Jeffcoat, and two reports from consultative examining physicians, Drs. Brandon and Gary. Dr. Jeffcoat completed a Medical Consultant Review form n August 3, 2007 that rated plaintiff's impairments as "not severe."[17] Ex. 8, p. 130. The ALJ accorded "considerable weight" to Dr. Jeffcoat's opinion, although he noted that the opinion "appears somewhat in excess of the record evidence." Ex. 3, p. 15.

Dr. Brandon performed a consultative examination on August 1, 2007 and assessed the plaintiff with lumbago, benign hypertension, paresthesis/numbness and osteoarthrosis in the

---

[16]In making this argument, the plaintiff challenges the sufficiency of the records submitted to the consultative examiners. Dr. Gary was provided only seven pages of plaintiff's medical records – none relating to his back, neck or shoulder impairments. Docket 7, p. 6. Dr. Brandon was given no medical evidence before he evaluated plaintiff. Docket 7, p. 6, Docket 10, p. 2.

[17]Dr. Jeffcoat provided a primary diagnosis of "lumbar strain" and explained "OJI 1/16/07. MRI bulging disc. TP told 3/8/07 claimant could return to light duty work for 3 weeks the regular work. Claimant at that time said leg was better. CE exam was relatively normal. MS only." Ex. 8, p. 130.

cervical spine. Ex. 8, p. 129. The Commissioner's argument that Dr. Brandon did not report a disabling condition (Docket 9, p. 8) is without significance because the record does not contain any statements at all by Dr. Brandon as to whether or not the plaintiff's conditions were disabling.

Dr. William Gary performed an updated consultative medical examination on July 8, 2009, after which he assessed the plaintiff with "chronic pain syndrome, cervical disk disease by history, residual discomfort right rotator cuff, hypertension, probable degenerative disk disease of the lumbar spine, probable BPH, questionable CAD, decreased visual acuity, corrected" (Ex. 9, p. 35). Dr. Gary imposed functional limitations of 10 pounds occasional lifting or carrying, no frequent lifting or carrying, and 2-hour limitations on both walking and sitting in an 8-hour work day. Ex. 9, p. 36-38. The ALJ accorded minimal weight to Dr. Gary's medical source statement – the only one contained in the record assessing the plaintiff's functional limitations – because it "bears no reasonable resemblance to the objective medial evidence," specifically the orthopedic and neurological findings.[18] Ex. 3, p. 15.

The responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), and in making his determination he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite his physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the ALJ may

---

[18]Additionally, the ALJ found that Dr. Gary's opinion was based on the plaintiff's subjective complaints, which the ALJ found to be "lacking in credibility." Ex. 3, p. 15. Dr. Gary's report stated that the degree of limitations are expected from the type and severity of the diagnoses, that the diagnoses were confirmed by objective findings and that his opinion was partially based on subjective complaints. Ex. 9, p. 38.

not establish physical limitations or the lack thereof without medical proof to support such a conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d at 35.

Citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995), the Commissioner argues that the ALJ was "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Docket 9, p. 7-9. This argument fails because a "contrary conclusion" was not established. Although the ALJ's decision identified plaintiff's treating physicians, it did not state how the medical proof, specifically the treating physician's records, support his RFC or his determination that plaintiff could perform medium work. The ALJ has considerable discretion in reviewing facts and evidence but, as a layman, he is not qualified to interpret raw medical data in functional terms. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) (citations omitted); *see Richardson v. Perales*, 402 U.S. 389, 408 (1971) (upholding the use of testimony from vocational expert because the ALJ is a layman). The ALJ discounted the limitations established by Dr. Gary without demonstrating that other medical proof supported the functional limitations contained in his findings, resulting in a RFC that was not supported by substantial evidence.

The Commissioner further argues that "none of Plaintiff's treating sources reported that his impairments were disabling." Docket 9, p. 9. However, the record does not contain any reports from treating physicians or any evidence that the ALJ sought a medical source statement

9

from any treating physician. An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further assure that "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(2)(1). Additionally, "[a]n ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.'" *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D.Tex. July 7, 2010), citing *Loza v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000). In the face of apparent discrepancies between limitations contained in his RFC and the limitations contained in Dr. Gary's report, the ALJ should have sought a medical source statement from plaintiff's treating physicians or obtained a consultative examination of the plaintiff from another physician. The undersigned finds that the ALJ did not satisfy his affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Therefore, the ALJ's decision was not supported by substantial evidence and should be remanded for further development of the record.

## IV. PLAINTIFF'S REMAINING ARGUMENTS

Because this action is being remanded for further evaluation consistent with this opinion, the court need not address in detail the merits of the plaintiff's remaining arguments at this time.

## V. CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 25th day of January, 2011.


                                                     /s/ S. Allan Alexander
                                      UNITED STATES MAGISTRATE JUDGE